UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ARNOLD C. THOMPSON,

      Plaintiff,

v.                     Case No. 24-cv-601-pp

CO MCGIBBON, *et al.*,

      Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

---

  Plaintiff Arnold C. Thompson, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

  The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On May 21, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $46.65. Dkt. No. 6. The court received that fee on June 17, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint (Dkt. No. 1)**

A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Correctional Officer McGibbon; Captain Ross; CPS Grenier; Wardens E. Barber, C. Stevens and M. Gierach; and Security Director Sawall. Dkt. No. 1 at 1, 3. All of the defendants work at Redgranite, where the plaintiff was incarcerated at the time of the events alleged in the complaint. Id. The plaintiff seeks to proceed against the defendants in their individual and official capacities. Id. at 7.

The plaintiff alleges that early in the morning on March 24, 2023, McGibbon told the plaintiff to go into the bathroom with him for a random urine analysis. Id. at 2. McGibbon told the plaintiff to enter the toilet stall, pull

3
Case 2:24-cv-00601-PP   Filed 07/23/24   Page 3 of 16   Document 9

down his pants, sit facing McGibbon with his legs open and "expose [his] penis and urinate in the cup." Id. McGibbon said "this was a new policy that had been implemented, urine tests." Id. The plaintiff protested, but McGibbon told him to "either comply, or go to segregation." Id. The plaintiff says he took the test. Id. He says he saw another incarcerated person leave the stall before him, but others told him they had refused the test without consequence. Id. The plaintiff says this made him question whether the policy was new or applied to all incarcerated persons. Id. at 2, 4.

The plaintiff filed a Prison Rape Elimination Act (PREA) complaint about the urinalysis test. Id. at 4. An institutional complaint examiner referred the complaint to Grenier. Id. But the plaintiff says Grenier "passed the buck for supervisory staff to investigate the concerns." Id. The complaint examiner ultimately dismissed the complaint, and Warden Stevens "agreed with the decision." Id. The plaintiff says Stevens also sent his PREA complaint to Warden Barber, Security Director Sawall and Grenier. Id.

The plaintiff wrote to Grenier, who responded by forwarding the plaintiff "a memo about the findin[g]s from the investigation that was alleged to be done." Id. The plaintiff says the memo "explained nothing much less the . . . standard of the PREA" investigation. Id. On April 28, 2023, the plaintiff again wrote to Grenier with "more questions," which he says "she answered." Id. at 5. But Grenier did not say who conducted the investigation "or anything in detail" and did not mention that no one had contacted the plaintiff about his

complaint. Id. The plaintiff asserts that Grenier's response "made clear of the quick cover-up investigation." Id.

The plaintiff alleges that on May 1 and 2, 2023, he "called outside PREA calls [*sic*]" to report Grenier's failure to properly investigate his complaint. Id. On May 2, 2023, Grenier asked the plaintiff "'who did he contact' outside the institution" and "claimed to want to investigate fully." Id. The plaintiff says that by the time Grenier came to speak with him, he "had already filed a failure to protect inmate complaint" because McGibbon was still on his housing unit. Id. He says that under Wisconsin Administrative Code, he should have been "separated/protected" from McGibbon. Id. The plaintiff claims "[t]his was done by" Sawall, Grenier and Barber, "all of which were informed of the failure to protect." Id. at 5–6.

The plaintiff alleges that "the PREA sexual misconduct was admitted that it happen, but blown off as a 'mistake' that was later learned from the PREA reports obtained." Id. at 6. He says he learned in the PREA report that McGibbon "claimed Capt. Ross gave him the directive to make plaintiff sit and give U.A. sample the way plaintiff was forced to do so, even tho[ugh] C.O. McGibbon stated he did feel this was inaccurate." Id.

The plaintiff says he appealed the denial of his administrative complaint "in regards to the failure to protect issue . . . but the appeal was deemed as untimely." Id. The plaintiff says he filed a second administrative complaint on January 26, 2024, "redressing the fact that the false information, omissions, and incomplete investigation stop him from getting relief on his failure to

protect complaint." Id. He says Grenier and Warden Gierach "failed to still protect after finding out about the false information, omissions, and incomplete investigation that stop the plaintiff from receiving due process on [his] failure to protect" administrative complaint. Id. at 6–7. He alleges that to date, Grenier and Warden Gierach have "refused to address the facts of the matter." Id. at 7.

The plaintiff says that PREA investigator Ronald Ortiz (not a defendant) told him, "This should not have happen to [him], . . . and this issue will be soon addressed." Id. He says this contradicts Grenier's responses to the plaintiff's questions about the investigation into his PREA complaint. Id.

The plaintiff seeks injunctive and monetary relief. Id. at 8. He asks the court to order "that no person under investigation for any sexual misconduct (PREA) or abusive behavior be left alone with, or be around the complaintant [*sic*] until a full unbiased thorough investigation is complete." Id. He wants the court to order "that no sexual misconduct (PREA) be just blown off as here as just as mistake to minimize this kind of sexual behavior." Id. The plaintiff also seeks "directive and review of U.A. urine analysis policy and procedure" at Redgranite. Id.

C. Analysis

It is not clear from the complaint whether the plaintiff is claiming that McGibbon's conduct of the urinalysis test violated his constitutional rights. The plaintiff explains what happened and why he thinks it constituted sexual harassment, but he does not say whether he wants to sue McGibbon (although he lists McGibbon as a defendant in the caption of the complaint). Out of an

6

abundance of caution, the court will infer that the plaintiff wants to proceed against McGibbon and will analyze a potential claim based on these allegations.

The court reviews the plaintiff's allegations of sexual harassment under the Eight Amendment, which protects convicted and incarcerated persons from cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive or unwanted force, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298, 303). "An unwanted touching . . . intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012). Prison officials' conduct other than touching, when done "in a harassing manner intended to humiliate and inflict psychological pain," may violate the Eighth Amendment. Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003); see also Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012) ("Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.").

The complaint alleges that Officer McGibbon ordered the plaintiff to enter a bathroom stall, pull down his pants, sit facing McGibbon with his legs open and urinate into a cup. The plaintiff says that his penis was exposed to McGibbon during this process. When the plaintiff protested, McGibbon told the plaintiff he would be sent to segregation if he did not comply. The plaintiff does not allege that McGibbon touched him or sexually assaulted him. He does not allege that McGibbon made any inappropriate comments to the plaintiff during the urinalysis that were intended to humiliate him or to cause him psychological pain. Nor does the plaintiff allege that he *was* humiliated or harmed (physically or psychologically) by this incident. He does not allege that McGibbon was sexually gratified during this incident. The complaint alleges only that McGibbon ordered the plaintiff to provide the urine sample as part of a new prison policy. The plaintiff says that McGibbon later reported feeling that the way he conducted the urinalysis "was inaccurate." None of this suggests that McGibbon conducted the urinalysis in an inappropriate manner that would violate the Eighth Amendment. The way in which McGibbon directed the plaintiff to provide the urine sample is analogous to a strip-search, which may violate an incarcerated person's rights if conducted unreasonably. See, *e.g.*, Henry v. Hulett, 969 F.3d 769, 776–77 (7th Cir. 2020). The plaintiff's allegations may show that the way McGibbon conducted the urinalysis was unnecessary, but they do not suggest he conducted the urinalysis unreasonably and in violation of the Eighth Amendment.

8

Case 2:24-cv-00601-PP   Filed 07/23/24   Page 8 of 16   Document 9

The complaint's only allegation against Captain Ross is that he directed McGibbon to conduct the urinalysis in the way the plaintiff has described. The plaintiff says he learned about Ross's involvement only after reading the report he received after filing his PREA complaint. As the court has explained, the plaintiff's allegations against McGibbon for how he conducted the urinalysis do not state an Eighth Amendment claim. That means that Captain Ross is not vicariously liable for directing McGibbon to conduct the urinalysis that way. See Gordon v. Degelmann, 29 F.3d 295, 298 (7th Cir. 1994).

The plaintiff alleges that after he filed an administrative complaint about staff failing to protect him from McGibbon, Grenier and Gierach refused to address the matter or take any action in response. These allegations amount to a claim of deliberate indifference, which also arises under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer, 511 U.S. at 832–33 (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates"). To satisfy the objective component for this claim, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The plaintiff must show that there was "a tangible threat to his safety or well-being"—in other words, a risk "so great that it is almost certain to materialize if nothing is done." Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011) (citing Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008) and Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005) (internal quotations omitted)). To satisfy the subjective component, the plaintiff must demonstrate that the officials

subjectively knew of an excessive risk of harm to his health or safety and disregarded that risk. Farmer, 511 U.S. at 837; Perez, 792 F.3d at 776.

The plaintiff's allegations do not state an Eighth Amendment claim against Grenier and Gierach. As the court has explained, nothing in the plaintiff's allegations suggest that McGibbon was trying to humiliate or abuse the plaintiff or gratify his own desires when he conducted the urinalysis. The complaint alleges only that McGibbon ordered the plaintiff to provide a urine sample in accordance with a new prison policy. It does not allege, for example, that McGibbon continued to harass the plaintiff or demand that he provide more urine samples. It alleges a single, isolated and completed incident involving McGibbon in which McGibbon allegedly stated that he was acting in accordance with prison policy. These allegations do not suggest that Grenier and Gierach were aware of and deliberately indifferent to an excessive risk of harm to the plaintiff from remaining on the same unit as McGibbon.

The plaintiff also asserts that Grenier and Gierach violated prison policy or state law by failing to separate him from McGibbon after the incident. But a violation of prison policy or state law does not infringe a constitutional right and does not state a claim under §1983. See Swarthout v. Cooke, 562 U.S. 216, 221–22 (2011); Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023).

The plaintiff's primary claim involves the handling of his PREA and administrative complaints. He first claims that his PREA complaint was not fully investigated. The plaintiff alleges that Grenier investigated the PREA complaint and provided him a report of the findings. The plaintiff may have

been dissatisfied with that investigation, but he does not have a right to a more thorough or complete one. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). He also claims that he was denied due process in the handling of his administrative complaints. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [an incarcerated person's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). That means that the plaintiff cannot state a due process claim about the handling of his administrative complaints. See also Steinke v. Dittmann, Case No. 17-cv-656-pp, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020) (quoting Reimann v. Frank, 397 F. Supp. 2d 1059, 1081 (W.D. Wis. 2005)) ("'[T]he due process clause does not require states to provide meaningful review of prisoner complaints.'").

The plaintiff also seeks to hold several defendants liable for their role in reviewing his administrative complaints. But prison officials do not violate an incarcerated person's rights by rejecting "an administrative complaint about a completed act of misconduct." George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007). A prison official "who merely reviews a grievance or appeal cannot be liable for the conduct forming the basis of the grievance." Stankowski v. Carr, Case No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) (citing Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017). That means that the plaintiff does not state a claim against Stevens, who he alleges affirmed the

11
Case 2:24-cv-00601-PP   Filed 07/23/24   Page 11 of 16   Document 9

dismissal of the plaintiff's PREA complaint and forwarded that decision to other staff. Nor does he state a claim against Barber, Sawall and Grenier, to whom Stevens forwarded the plaintiff's denied appeal but did not conduct further investigation. The plaintiff does not say that any of those defendants were involved in the urinalysis, and they cannot be held liable for denying or rejecting the plaintiff's complaints or appeals about it.

The complaint does not state a claim against Barber or Sawall for similar reasons. The allegations against Barber and Sawall are only that they (along with Grenier) "were informed" about the plaintiff's administrative complaint about staff not protecting him from McGibbon and took no further action. Dkt. No. 1 at 5–6. As with Stevens, this allegation suggests only that Barber and Sawall were aware of the plaintiff's administrative complaint, not that they were involved in the conduct that formed the basis of that complaint. The plaintiff cannot seek to hold them liable for not responding to his administrative complaint in a favorable way. See George, 507 F.3d at 609–10; Steinke, 2020 WL 470145, at *3.

The complaint does not state a claim against any defendant in his individual capacity. The plaintiff also seeks to proceed against the defendants in their official capacities. Claims against an official in his official capacity represent another way to plead an action against the entity that he represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the claims against the defendants in their official

capacities as having been brought against the Wisconsin Department of Corrections, the agency for which they work. Id. at 165–66. Claims against the Department of Corrections are "no different from a suit against the State itself," so the court construes these claims as if brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff may not proceed against the defendants in their official capacities to recover damages. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff also seeks injunctive relief in the form of a court order directing Redgranite to establish new procedures for handling and investigating PREA complaints and protecting incarcerated persons who file PREA complaints. He seeks review of Redgranite's urinalysis policy and procedures. Injunctive relief is available under §1983 against state officials acting in their official capacities. See Will, 491 U.S. at 71 n.10 (citing Graham, 473 U.S. 159, 167 n.14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908)). Although the court finds that Officer McGibbon did not violate the plaintiff's Eighth Amendment rights when he conducted the urinalysis, Redgranite's policy of conducting urinalyses in the way the plaintiff describes may violate the Eighth Amendment. See Edwards v. Haines, Case No. 16-CV-317, 2017 WL 5312212, at *2 (W.D. Wis. Nov. 13, 2017) (allowing incarcerated person to proceed on

claim that prison warden "implemented a policy mandating that inmates would be nude during [urinalyses] or failed to change the policy after being alerted to the practice").

The court will allow the plaintiff to proceed on his claim for injunctive relief against Warden Stevens, who as the interim warden of Redgranite is the proper defendant to provide the injunctive relief that he seeks. See Gray v. McCaughtry, 72 F. App'x 434, 437 (7th Cir. 2003) (citing Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989)) (proper defendants for purposes of injunctive relief were supervisory officials of government agency). The court will dismiss all other defendants because the plaintiff does not state a claim against them in their individual capacities, and his claims against them in their official capacities would be duplicative of (the same as) his official-capacity claim against Stevens.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Correctional Officer McGibbon, Captain Ross, CPS Grenier, Wardens E. Barber and M. Gierach and Security Director Sawall.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on

Redgranite Warden C. Stevens. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$303.35** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Redgranite Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 23rd day of July, 2024.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**