**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ARNOLD C. THOMPSON,**

**Plaintiff,**

**v.** **Case No. 24-CV-601**

**SCOTT MCGIBBON,**

**Defendant.**

---

**DECISION AND ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

---

Arnold C. Thompson, who is incarcerated and representing himself, sues Scott McGibbon under 42 U.S.C. § 1983 alleging McGibbon sexually harassed him in violation of the Eighth Amendment. The parties filed cross-motions for summary judgment, which are fully briefed and ready for decision. (Docket # 60, Docket # 68.) For the reasons stated below, McGibbon's motion for summary judgment is granted and Thompson's motion for summary judgment is denied. The case is dismissed.

**FACTS**

At all times relevant, Thompson was housed at Redgranite Correctional Institution ("RGCI"). (Docket # 62, ¶ 1.) McGibbon was employed as a correctional officer at RGCI. (*Id.*, ¶ 2.)

On March 24, 2023, McGibbon was assigned to collect random urine analysis tests from RCGI prisoners. (*Id.*, ¶ 8.) McGibbon was provided a list of prisoners to be tested; the list was randomly generated. (*Id.*, ¶ 9.) Thompson asserts that McGibbon could then "pick at [his] own will who he wanted to test off the generated list." (Docket # 70, ¶ 9.)

Prior to conducting the tests, McGibbon states he had a meeting with a supervisor, and he left that meeting believing "he was directed to conduct urine analysis testing with the inmate sitting on the toilet and facing McGibbon" in order to prevent tampering with the test. (Docket # 62, ¶ 10.) As such, when McGibbon tested Thompson, he had him sitting on the toilet facing McGibbon. (*Id.*, ¶ 13.)

Thompson states that at the meeting with the supervisor, McGibbon was provided instructions on how to conduct urine analysis testing according to the Division of Adult Institutions ("DAI") policy. (Docket # 70, ¶ 10.) According to the policy, an inmate should provide "the sample in the toilet stall [and] the staff member would stand partially behind the inmate providing the sample." (*Id.*) Thompson further alleges that McGibbon conducted the urine analysis test the way he did "because he wanted to." (*Id.*, ¶ 12.) When McGibbon had Thompson take the test, he made Thompson sit "with his pants pulled down around his ankles, with his penis exposed, and legs open and buttocks exposed also." (*Id.*, ¶ 13.)

Thompson further states that as he pulled his clothes back up he noticed another inmate, Mario Wood, looking at him and McGibbon. Thompson states he felt embarrassed, humiliated, disrespected, and sexually assaulted. (Docket # 73 at 6.) Thompson asserts that McGibbon had a dazed look that made him feel "sexually assaulted like he was flabbergasted." (*Id.*, at 7.) Wood avers that after Thompson handed McGibbon the urine sample and McGibbon turned to walk away, McGibbon "began to gloat." (Docket # 72.) Wood states that McGibbon "had a real look of satisfaction on his face." (*Id.*)

McGibbon does not dispute that he directed Thompson to sit on the toilet facing him for the urine test. (Docket # 61 at 1.) McGibbon asserts, however, that he misunderstood how

to conduct the test. (*Id.*) He avers that he had no intention of humiliating Thompson by conducting the urine test in this manner, that he did not talk to Thompson in any derogatory way during the testing, and that he received no sexual gratification in conducting the urine test in this manner. (Declaration of Scott McGibbon ¶¶ 11–13, Docket # 65.) McGibbon avers that he conducted all of the urine analysis testing on March 24, 2023, in this same manner and that he was later corrected by his supervisor on how to conduct urine analysis testing. (*Id.*, ¶¶ 14–15.) McGibbon states that once corrected on the procedure, he never conducted a urine analysis test in the way it was conducted on March 24, 2023, again. (*Id.*, ¶ 16.)

Thompson disputes McGibbon's assertion that he misunderstood how to conduct the test, stating that all staff are trained on the DAI policy for drug testing. (Docket # 70, ¶ 18.) He further asserts that another prisoner, Jacob Grimm, was tested at the urinal by McGibbon on March 24, 2023. (*Id.*, ¶ 17.) Thompson further disputes McGibbon's averment that he ceased conducting urine tests in this manner after correction by his supervisor; however, he cites no specific evidence to dispute this statement. (*Id.*, ¶ 19.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

Thompson claims that McGibbon violated his Eighth Amendment rights by making him expose himself while conducting a urine test. There is no question that prisoners face conditions that may be considered "unpleasant, humiliating, and embarrassing," such as strip searches or urine testing. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). However, "not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Id.* Rather, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain"; thus, "forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Id.* (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). "Such gratuitous infliction of pain always violates contemporary standards of decency and need not produce serious injury in order to violate

the Eighth Amendment." *Id.* In other words, physical injury need not result for the action to offend the Eighth Amendment, "for the wanton infliction of psychological pain is also prohibited." *Id.* As such, a prison official's conduct may violate the Eighth Amendment if done "in a harassing manner intended to humiliate and inflict psychological pain." *Id.*

Taking the facts in a light most favorable to Thompson, he fails to produce evidence sufficient to support that McGibbon conducted the urine test in a manner intended to cause Thompson humiliation and psychological pain. None of the evidence Thompson presents rises to this level. First, Thompson argues McGibbon intentionally violated DAI policy in conducting the urine test. (Docket # 69 at 3.) He argues that McGibbon's claim that he misunderstood the DAI drug testing policy is not credible based on the training the officers received. Even assuming, however, that McGibbon did knowingly violate DAI policy, violation of the prison's rules is not, by itself, a violation of the constitution. *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). Such a violation, can, however, provide evidence of a culpable state of mind when considered in conjunction with other evidence. *See id.* But in this case, Thompson's additional evidence fails to provide this support.

Thompson next argues that he felt humiliated exposing his genitals and urinating in front of McGibbon and that it is "derogatory in every way" to "ask a straight male to pull his pants down [and] expose his penis and bottocks [sic], sit and urinate in a cup with his legs open, facing . . . another man" (Docket # 70, ¶ 15). But "'a prisoner's expectation of privacy is extremely limited in light of the overriding need to maintain institutional order and security.'" *Whitman v. Nesic*, 368 F.3d 931, 935 (7th Cir. 2004) (quoting *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987)). Thus, a policy of random drug testing requiring a prisoner to expose his genitals does not, in and of itself, rise to the level of a constitutional violation.

*See Whitman*, 368 F.3d at 935 (finding that a prisoner being made to stand naked for twenty minutes while struggling to produce a urine sample was not a "sufficiently serious" condition of confinement to rise to the level of a constitutional violation); *see also Faison v. Ward*, No. 16-CV-0853, 2016 WL 6582649, at *3 (S.D. Ill. Nov. 7, 2016) (finding prisoner failed to state an Eighth Amendment claim when he alleged he was forced to show the defendant his penis while he provided a urine sample).

Nor does either Thompson's or Wood's testimony regarding McGibbon's facial expressions support a subjective intent to humiliate Thompson. Thompson avers that McGibbon had an "expression on his face . . . being his eyes had a daze[d] look like he was flabbergasted." (Docket # 69 at 5.) Wood, who was present when Thompson's urine test was conducted, avers that when McGibbon turned to walk away "he began to gloat" and "had a real look of satisfaction on his face." (Docket # 72.) These rather vague descriptions do not indicate an intent to humiliate or cause psychological pain. Further, while Wood states that McGibbon "began to gloat," assuming he contends McGibbon spoke, Wood provides no detail as to what McGibbon said.

The insufficiency of Thompson's evidence is clear when compared to the type of evidence the Seventh Circuit has found does rise to the level of an Eighth Amendment claim. For example, in *Calhoun*, the Seventh Circuit found that the plaintiff sufficiently stated an Eighth Amendment claim by alleging that during a strip search, the prison guards made ribald comments and sexually explicit gestures, forced him to perform sexually provocative acts, and invited female guards to watch the search. 319 F.3d at 940. And in *Mays v. Springborn*, 575 F.3d 643 (7th Cir. 2009), the court of appeals concluded that plaintiff's evidence that he was subjected to daily strip searches in front of other inmates, that the searches were

conducted in cold rooms with dirty latex gloves, and that the guards sometimes made demeaning comments as they searched the naked prisoners, in conjunction with the searches being conducted in knowing violation of the prison's regulations, was sufficient to create a jury question on the plaintiff's Eighth Amendment claim. *Id.* at 649–50.

In contrast, Thompson presents no evidence that McGibbon mocked him, made demeaning or sexually explicit comments, or touched him inappropriately. At most, Thompson argues McGibbon watched him while he provided a urine sample with a momentary expression on his face that Thompson did not like. Thompson fails to present evidence in which a reasonable jury could infer that McGibbon intended to humiliate Thompson or otherwise cause him psychological harm. For these reasons, on this record, no reasonable fact finder could conclude that McGibbon violated Thompson's Eighth Amendment rights.

## CONCLUSION

For the foregoing reasons, McGibbon's motion for summary judgment is granted and Thompson's motion for summary judgment is denied. While McGibbon also argues that he is entitled to qualified immunity, because I find in McGibbon's favor on the merits of Thompson's claim, I need not address this argument. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that McGibbon's motion for summary judgment (Docket # 60) is **GRANTED**.

**IT IS FURTHER ORDERED** that Thompson's motion for summary judgment (Docket # 68) is **DENIED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 16th day of November, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge